**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION AND HELENA DIVISION**

**IN RE: TOMMY F. ROBINSON**

**CASE NO.  4:07MC00005 JMM
CASE NO.  4:07MC00006 JMM
CASE NO.  4:07CV000489 JMM
CASE NO.  2:07CV000089 JMM
CASE NO.  2:07CV000129 JMM
CASE NO.  2:07CV000130 JMM
CASE NO.  2:07MC000001 JMM
CASE NO.  2:08CV000014 JMM**

**ORDER**

For the reasons stated below, the Court makes the following rulings on the pleadings pending before the Court.

Roy C. Lewellen's and Tommy  Robinson's Petitions for

Permission To Appeal Contempt Findings are dismissed as moot.

(Cases Nos. 4:07MC00005 and 4:07MC00006)

Tommy Robinson's Objections to the Bankruptcy Court's Orders

of Criminal Contempt are overruled.  This Court adopts the

Bankruptcy Court's Orders of April 17, 2007 and February 1, 2008

as its own and finds Tommy Robinson in criminal contempt.

(Cases Nos. 4:07CV00489 and 2:07MC00001).

1

Tommy and Carolyn Robinsons' Appeals of the Denials of

Discharge are affirmed. (Case No. 2:07cv00089).


Sheila F. Campbell's and Roy C. Lewellen's Appeals of Bankruptcy Rule 9011

Sanctions are affirmed in part and denied in part.   (Cases Nos. 2:07CV00129 and

2:07CV00130).


Tommy Robinson's Appeal of the Bankruptcy Court's denial of his

*Pro Se* Motion is affirmed. (Case No. 2:08CV00014).


I. *Facts*

The background and procedural history of these cases are fully explained in *In re Robinson*, 368 B.R. 818 (Bankr. E.D. Ark. 2007), *In re Robinson*, 368 B.R. 805 (Bankr. E.D. Ark 2007),  *In re Robinson*, 373 B.R. 612 (Bankr. E.D. Ark. 2007) and *In re Robinson*, 381 B.R. 256 (Bankr. E.D. Ark. 2008), but for the purposes of this Order, the Court will briefly summarize the events relevant to these petitions and appeals.

Ag-Pro Farms of Arkansas ("Ag-Pro Farms") is a corporation owned by Robinson and his family.  Ag-Pro Farms owned a one-third interest in a partnership called Wildlife Farms II ("Wildlife Farms") which in turn owned a 2,500-acre farm in Monroe County, Arkansas.   The remaining partners of Wildlife Farms were DBJ Investments, LLC and B & L Thompson Investments, LLC.

2

Wildlife Farms loaned Ag-Pro Farms $175,000.00 secured by Ag-Pro Farms' interest in Wildlife Farms.   The Circuit Court of Monroe County found Ag-Pro Farms in default on this loan and ordered Ag-Pro Farms' one-third interest in Wildlife Farms sold unless the judgment was paid within 10 days ("state court case I").

Wildlife Farms negotiated separate six-month Wetland Reserve Easement Option Contracts ("easement option contract") with the United States which, if exercised, would have allowed the United States to impose a wildlife easement on the 2,500-acre farm in Monroe County.  This first easement option contract originated on August 9, 2004 and expired without being exercised in February of 2005.  The second easement option contract originated in March of 2005, and was amended in May of 2005.   The existence of the first easement contract option was not disclosed to the state court or to the Robinsons during the course of state court I.

On September 3, 2004, before a final judgment could be entered in state court case I, Ag-Pro Farms filed a voluntary Chapter 11 petition for bankruptcy (Case No. 2:04-bk-20447) listing as one of its assets a one-third interest in Wildlife Farms.  Roy C. Lewellen represented AG-Pro in state court case I, but not in its bankruptcy proceeding.

Ag-Pro Farms consented to an order granting relief from the automatic stay brought about by the bankruptcy to permit foreclosure on the property by Wildlife Farms.  This occurred on December 27, 2004.  Ag-Pro Farms' interest was sold to Wildlife Farms in January of 2005. Upon a motion by Ag-Pro Farms, its bankruptcy case was converted to a Chapter 7, declared a no-asset case, and closed on June 1, 2005.

In  May of 2005, several  months after Ag-Pro Farms' interest in Wildlife Farms had been foreclosed, the final easement option contract was negotiated.   This last easement option

3

contract was exercised in July of 2005 and closed in August of 2005 resulting in Wildlife Farms

receiving $1,635,074.00.  Robinson claims one-third interest in this amount based upon his one

time one-third interest in Wildlife Farms.

On March 25, 2005, Robinson and his wife, Carolyn, were placed in separate involuntary

Chapter 7 bankruptcies by two of their creditors, Bill Thompson and Boyd Rothwell.[1]  The

Robinsons contested the involuntary bankruptcies.  Following a hearing held by Bankruptcy

Judge James G. Mixon on September 28, 2005, they were ordered Chapter 7 debtors.

Wildlife Farms, Thompson, and Rothwell ("the creditors") filed objections to the

Robinsons' discharges contending that debts owed to them were nondischargeable pursuant to 11

U.S.C. § 523(a)(4)[2] and that the Robinsons' discharges should be denied pursuant to 11 U.S.C. §

727(a)(2), (3), (4), and (5).[3]  In April of 2006, the Robinsons filed an answer and counterclaim in

which they, again, raised a claim of fraud based upon the failure of the creditors to inform them,

or the state court, of the easement option contract.  The counterclaim contained allegations that

Rothwell and Thompson had committed perjury at the September 28, 2005 hearing on the

Robinsons' contested involuntary bankruptcies.

---

[1]Two of Robinson's business entities, Brinkley Truck & Tractor Towing & Recovery, Case No. 2:04-bk-20495, and Brinkley Truck & Tractor, Inc., Case No. 2:04-bk-20448, which were in voluntary Chapter 7 bankruptcies were consolidated with the two involuntary Chapter 7 bankruptcies of  Robinson and his wife and all four cases were administratively consolidated for convenience of administration into the case of *In re Robinson*, Case No. 2:05-bk-13915.

[2]Under 11 U.S.C. § 523(a)(4), a debt is nondischargeable if it is for "fraud or defalcation while acting in a fiduciary capacity".

[3]Under 11 U.S.C. § 727, a discharge is denied if the debtor hindered a creditor, concealed or destroyed information, made a false oath, or failed to explain any loss of assets.

In May of 2006, Thompson and Rothwell notified Campbell, Robinson's attorney, that they intended to file a motion for sanctions based upon the representations made in the counterclaim that Thompson and Rothwell had committed perjury.  They provided Campbell a copy of the motion and exhibits which included a transcript of Rothwell's and Thompson's testimony.  Campbell was extended  the twenty-one day safe harbor provided by Bankruptcy Rule 9011.

On June 9, 2006, Judge Mixon approved the trustee's settlement of several of the debtors' outstanding lawsuits over the debtors' objections including the objection regarding the creditors failure to inform the Robinsons, or the state court, of the easement option contract ("global settlement").  This global settlement occurred after Robinson and Campbell met with the trustee to inform him that the United States had exercised its easement option contract resulting in a payment to Wildlife Farms.  The trustee investigated the matter and settled with these creditors for $10,000.00 all issues which were, or could have been raised, including the issue related to the failure to disclose the easement option contract.  In approving the global settlement, the bankruptcy court specifically found that the debtors lacked standing to object to the settlement because any interest they had in Wildlife Farms belonged to the trustee.  There was no appeal of this order.

On July 12, 2006, Thompson filed a motion for contempt against Robinson and his sons for committing an alleged assault and battery against him in retaliation for his effort to assist a potential purchaser of property from Carolyn Robinson.  The bankruptcy court held a hearing on the matter and issued an order on July 28, 2006 which stated:

> [T]he Court hereby enjoins and restrains Tommy F. Robinson and any persons acting for or at his behest from engaging in or taking any actions to interfere in any way with the administration of these jointly administered bankruptcies or the sale of assets of the bankruptcy estates by the Trustee, including but not limited to any action to coerce, intimidate, harass, hinder or threaten the Trustee, any creditors, attorneys or parties in interest in these jointly administered bankruptcies until their completion or closure.

*In re Robinson*, Case No. 2:05-bk-13915, Doc. # 187.  No appeal was taken from this order.

On August 22, 2006, Campbell entered a stipulation  in which she agreed to dismiss the counterclaim and admitted that she, and her clients, were mistaken in their assertion that Rothwell and Thompson had committed perjury.

The 2,500 acre farm owned by Wildlife Farms was scheduled to be sold at auction on December 19, 2006.  On December 18, 2006, Lewellen, at Robinson's request, filed a lawsuit in Monroe County Circuit Court ("state court action II") alleging that Thompson and Rothwell committed fraud by failing to disclose to Judge Bentley E. Story the easement option contract. Lewellen also filed a notice of *lis pendens* in the Circuit Court of Monroe County, Arkansas. The auction was cancelled because the title insurance company would not issue a title policy.

On December 21, 2006, Wildlife Farms, Rothwell, and Thompson filed a motion for an order of contempt contending that Robinson's and Lewellen's actions in filing state court action II and the *lis pendens* notice violated the bankruptcy court's July 28, 2006 order.[4]

In January of 2007, Campbell and Lewellen filed a motion for relief from stay seeking permission from the bankruptcy court for state court action II to proceed.  It was the debtors'

---

[4]Rothwell, Thompson and Wildlife Farms argued that Robinson's and Lewellen's actions were designed (1) to interfere with the trustee's administration of the debtors' bankruptcies ; (2) to interfere with the trustee's sale and settlement of the litigation assets of the debtors; and (3) to coerce, intimidate, damage and harass them as creditors.

contention that their complaint in state court action II would persuade the state court to vacate its

finding of foreclosure in state court action I which would result in the debtors' prior ownership of

Ag-Pro Farm being reinstated.  It was argued that once their ownership was reinstated, the

Robinsons would have access to the money generated from the easement option contract by way

of  Ag-Pro Farms' ownership of  the one-third interest in Wildlife Farms.  The Robinsons

contended that they could have then repaid the $175,000.00 debt owed to Wildlife Farms

resulting in Thompson and Rothwell not being able to place the Robinsons in Chapter 7

bankruptcies.

       The bankruptcy court held a hearing on February 26, 2007, on the motion for contempt

and the motion for relief from stay.  The court denied the motion for relief from stay, and found

Robinson and Lewellen in civil contempt based upon their filing of state court action II, and

remanded them to the custody of the United States Marshall until they dismissed state court case

II and withdrew the *lis pendens* notice.[5]   At the conclusion of the hearing the court announced its

intention to impose criminal sanctions against Robinson and Lewellen with a fine of $5,000.00

each and by assessing attorney's fees and damages including the costs to auction the property.

Robinson and Lewellen were released from incarceration on February 27, 2007, after they

dismissed state court case II and Lewellen withdrew the *lis pendens* notice.   On February 28,

2007, the court denied the motion for relief from stay by a written order.  There was no appeal

from this order.

---

[5]The court entered its written order finding Robinson and Lewellen in civil contempt on
February 27, 2007.

The creditors filed a motion for sanctions against Campbell and Lewellen on March 15, 2007 based upon the pleadings filed in the motion for relief from stay and the response to their motion for contempt.  On April 4, 2007 a second motion for sanctions was filed against Campbell regarding statements she made in open court at the February 26, 2007 hearing.

On April 17, 2007, Judge Mixon issued an order pursuant to Federal Rule of Bankruptcy Procedure 9020 and 9033(b) finding Robinson in criminal contempt and ordered sanctions consisting of (1) Robinson's payment of the defendants' attorney's fees and costs in state court II; (2) a fine of $5,000.00; and (3)  incarceration for six months which was suspended as long as Robinson did not interfere with the administration of any of the bankruptcy estates in any manner including assault, battery, threats, and filing frivolous pleadings, motions, and lawsuits.  The court found that Lewellen was not in criminal contempt of its previous order and that Lewellen's actions would be more appropriately considered pursuant to the pending motion for sanctions.

On April 20, 2007, the court held a hearing on the motions for sanctions against Lewellen and Campbell, and ordered sanctions against Lewellen consisting of  Lewellen's payment of the defendants' attorney's fees and costs in state court case II[6] and damages related to the cancelled sale of the farm in Monroe County.  Judge Mixon did not assess any damages or fees against Campbell at the hearing.

In May of 2007, after a trial on the merits of the objections to the Robinsons' discharge, Judge Mixon found that the Robinsons had made false statements and omissions knowingly, intentionally, and with fraudulent intent while under oath.  The bankruptcy court denied Tommy Robinson's and Carolyn Robinson's discharge pursuant  to § 727(a)(4)(A).

---

[6] These sanctions were assessed against Robinson and Lewellen, jointly and severely.

On August 29, 2007, Judge Mixon granted the two motions for sanctions filed by the creditors.  On the first motion, the court set aside its assessment against Lewellen for the damages related to the cancelled sale of the farm.  The court then assessed sanctions against both counsel by requiring Lewellen and Campbell to pay legal fees and costs incurred in the course of defending the motion for relief from stay and for prosecuting the first motion for sanctions[7] and by holding Campbell and Lewellen jointly and severally liable for payments of $10,000.00 to Thompson and $10,000.00 to Rothwell.  On the second motion, the court ordered Campbell to pay attorney's fees and expenses generated in response to her counterclaim, including but not limited to fees related to the warning letter, original motion for sanctions, settlement negotiations of the original motion, second motion for sanctions, and the hearing on the second motion for sanctions, and $2,000.00 to Rothwell and $2,000.00 to Thompson.

Counsel for the creditors subsequently filed an application for fees incurred in defending the motion for relief from stay and for prosecuting the first motion for sanctions.  The fees totaled $23,846.50, the costs totaled $571.45, and the expenses incurred as a result of the cancellation of the auction amounted to $110,000.00.[8]  A hearing was held on the application for fees on April 20, 2007 which was followed by a written order dated October 12, 2007 in which Judge Mixon awarded judgment to Wildlife Farms against Robinson in the amount of $102,817.81 for expenses of the auction pursuant to the February 26, 2007 and April 17, 2007 orders, and judgment to Wildlife Farms, Thompson, and Rothwell against Tommy Robinson in

---

[7]The bankruptcy court made this amount jointly and severally liable with any previous assessment for the same fees and costs assessed against debtor Tommy Robinson.

[8] Robinson appealed this judgment in Case No. 2:07MC0001 which has been consolidated with Case No. 4:07CV00489.

the amount of $24,417.95 for attorney's fees and costs pursuant to these same orders.

On that same date, pursuant to the August 29, 2007 order, the court awarded judgment to Wildlife Farms, Thompson, and Rothwell against Campbell and Lewellen, jointly and severally, in the amount of $18,829.53 for costs and attorney's fees.  Robinson was held jointly and severally liable for these amounts in addition to fees he had previously been assessed.  By order of October 12, 2007, Judge Mixon awarded judgment pursuant to its August 29, 2007 order to Wildlife Farms, Thompson, and Rothwell against Campbell in the amount of $9,652.45 for costs and attorney's fees.[9]

On December 5, 2007, Tommy Robinson filed a *pro se* motion seeking permission of the bankruptcy court to file a complaint against Judge Mixon with the Judicial Council of the Eighth Circuit; a complaint with the United States Attorney's Office for the Eastern District of Arkansas asking for a criminal investigation of Thompson,  Rothwell, and their counsel, Stuart Hankins; a lawsuit against the trustee in his bankruptcy case for misconduct and breach of fiduciary duties; a lawsuit against Hankins for fraud and malpractice; and a lawsuit against Bill Thompson and Rothwell for fraud.  In response to this motion, Thompson and Rothwell filed a motion for civil contempt against Robinson for violating the bankruptcy's court order of July 28, 2006.

The bankruptcy court held a hearing on December 14, 2007 on Robinson's and Thompson's motions.   On December 17, 2007, the bankruptcy court issued an order to show cause why Robinson should not be held in criminal contempt for violating its July 28, 2006 order.   The bankruptcy court issued an order denying Robinson's motion regarding his request to

---

[9]Lewellen and Campbell filed supplemental notices of appeal of these judgments on November 16, 2007.

file lawsuits against the trustee, Hankins, Thompson, and Rothwell on December 19, 2007

finding the motion frivolous and barred by *res judicata*.   A second order issued that same day

dismissed without prejudice the portion of the motion which  sought permission to file a

complaint with the Judicial Council because such permission was not necessary and dismissed

the request for a criminal investigation with the United States Attorney's office based upon lack

of jurisdiction.   A third order denied Thompson's and Rothwell's motion for civil contempt

because the evidence appeared to the court to present a case for criminal contempt.

Robinson filed a notice of appeal of the court's decision regarding his *pro se* motion to

file complaints and lawsuits against various parties on December 19, 2007.  He failed, however,

to designate the record in a timely fashion which led to two motions to dismiss by the appellee

and the trustee.  Robinson filed his designated record on January 14, 2008.

A hearing was held on January 18, 2008 on the bankruptcy court's order to show cause

with Robinson appearing in person and with Lewellen as his attorney.  The bankruptcy court

issued its order on February 1, 2008, finding Robinson in criminal contempt of its July 28, 2006

order[10] and sentenced him to incarceration for a period of two months or such other period of

time that this Court should determine upon review of the February 1, 2008 order.  Robinson filed

objections to that order on February 4, 2008.

---

[10]This second finding of criminal contempt is related to the court's finding on April 17,
2007 that Robinson was in criminal contempt and ordered him incarceration for six months.  In
the April 17, 2007 order, the bankruptcy court suspended execution of the order as it pertained to
incarceration as long as Robinson did not interfere with the administration of any of the
bankruptcy estates related to his cases in any manner including assault, battery, threats, and filing
frivolous pleadings, motions, and lawsuits.

II. *Analysis*

The bankruptcy court's factual findings are reviewed for clear error, while its legal conclusions, as well as its conclusions involving mixed questions of law and fact, are reviewed *de novo*. *See DeBold v. Case*, 452 F.3d 756, 761 (8ᵗʰ Cir. 2006). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id* Moreover, where the factual findings call for an assessment of witness credibility, even greater deference to the trier of fact is demanded. *In re Hixon*, 387 F.3d 695, 700 (8ᵗʰ Cir. 2004) (deference given to bankruptcy court's factual findings when findings call for assessment of witness credibility and where record contains no contradictory documents or objective evidence).

A. *Lewellen's and Robinson's Motions for Permission to Appeal the Bankruptcy Court's Findings of Civil Contempt*

Both Lewellen and Robinson recognize that the bankruptcy court's finding of civil contempt is not a final order, and seek leave of the court pursuant to 28 U.S.C. § 158(a)(3) to appeal these interlocutory orders. This Court has the discretion to grant leave to appeal interlocutory bankruptcy court orders. *See* 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8001(b). Leave of court to appeal from interlocutory orders should be granted sparingly, and generally only in exceptional cases. *See In re Machinery, Inc.*, 275 B.R. 303, 306 (8ᵗʰ Cir. B.A.P. 2002) (citations omitted). In determining whether to grant leave to appeal, this Court applies the standard set forth in 28 U .S.C. § 1292(b), which requires "(1) the question involved be one of law; (2) the question be controlling; (3) there exists a substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) a finding that an

12

immediate appeal would materially advance the ultimate termination of the litigation." *Id.*

Robinson and Lewellen contend that these appeals raise the following issues: (1) use of coercive contempt powers regarding Lewellen's legal representation of Robinson and Robinson's rights under state law to file a complaint upon advice of his attorney, (2) jurisdiction over their filing an action in state court, (3) finding that state court action II was filed for malicious purposes, (4) finding of contempt when there was no evidence that Lewellen had knowledge of the court's previous order or that Robinson's  filing of state court action II was in violation of the bankruptcy court order, (5) bias and prejudgment on the issues, (6) refusal to allow Lewellen to defend himself, (7) refusal to accept a file-stamped copy of a document as proof of compliance, and (8) use of contempt to force Lewellen to take actions over the objections of his client and use of contempt powers to force Robinson to dismiss a complaint in state court.  Both Robinson and Lewellen seek to vacate the findings of contempt.

The creditors argue that Lewellen's and Robinson's cases do not meet the necessary standard for interlocutory bankruptcy appeals, and that the appeals are moot as Lewellen and Robinson have purged themselves of contempt.

The courts have consistently held that appeals from civil contempt orders are rendered moot once the contemnor complies and purges himself of contempt.  *See Barnes v. Bosley*, 828 F.2d 1253, 1259-60 (8th Cir. 1987); *United States v. Watson Chapel School District No. 24*, 446 F.2d 933 (8th Cir. 1971).   Lewellen and Robinson purged themselves of civil contempt when they dismissed the state court action II and the *lis pendens* notice which renders their appeal moot.

13

Moreover, Lewellen's assertion that he should be allowed to proceed with his appeal because future professional conduct actions against him might occur as a result of this civil contempt finding is unavailing.  *See F.T.C. v. Stroiman*, 428 F.2d 808 (8th Cir. 1970) (*per curiam*) (an appeal based upon a possible future sanction does not amount to a case or controversy).

On August 29, 2007, Judge Mixon set aside his assessment for auction costs against Lewellen made in open court on April 20, 2007, and stated that any sanctions assessed against Lewellen would be more appropriately considered pursuant to the March 15, 2007 motion for sanctions filed by the creditors.  In his April 17, 2007 order Judge Mixon set aside his finding of criminal contempt against Lewellen which vacated the contemplated $5,000.00 fine.  Robinson's monetary sanctions were assessed based upon the finding of criminal contempt.  There are no other issues raised in this motion for permission to appeal other than the appeal of Lewellen's and Robinson's incarceration based on a finding of civil contempt.

Because the appeals are moot, this Court lacks jurisdiction to consider the interlocutory appeals.  The motions in 4:07MC00005 and 4:07MC00006 are dismissed as moot.

B. *Robinson's Objection to Order Finding Criminal Contempt*

Judge Mixon elected to proceed under Federal Rule of Bankruptcy Procedure 9033(b) which calls for a District Court's *de novo* review of a finding of contempt if a party objects to the bankruptcy court's finding within 10 days of entry of the court's order, and Federal Rule of Bankruptcy Procedure 9020.[11]

---

[11]Rule 9020. Contempt Proceedings

Rule 9014 governs a motion for an order of contempt made by the

14

The record reflects that the court entered its orders of criminal contempt on April 17, 2007 and February 1, 2008, and that Robinson filed timely objections on April 23, 2007 and February 5, 2008.

A finding of criminal contempt is based upon "'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'"  *Wright v. Nichols*, 80 F.3d 1248 (8th Cir. 1996) (quoting  *In re Holloway*, 995 F.2d 1080, 1082 (D.C.Cir.1993)).  "[T]he contemnor must act willfully."  *United States v. Berndt*, 97 F.3d 1457 (8th Cir. 1996).  As applied to criminal contempt, " willfulness 'means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order,' and the necessary intent 'may be inferred from the evidence.'"  *Wight v. Nichols,* 80 F.3d at 1252 (quoting *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir. 1987)).

Criminal contempt proceedings are appropriate to punish the alleged contemnor and to

---

United States trustee or a party in interest.

Federal Rule of Bankruptcy Procedure 9014 states in relevant part:

> (a) Motion. In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

> (b) Service. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) Fed. R. Civ. P.

vindicate the court's authority. *See United States v. United Mine Workers*, 330 U.S. 258, 302-03 (1947) (citation omitted); *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781-82 (8th Cir. 1987) ("if the penalty is punitive, intended to vindicate the authority of the court, then the contempt is criminal.").

Prior to a finding that a debtor is in contempt of court, it must be proven beyond a reasonable doubt that there was a violation by the debtor of a clear and reasonably specific order of the court, and the violation was willful.  *See United States v. Smith*, 502 F.Supp. 2d 852, 857 (D.Minn. 2007); 18 U.S.C. § 401(3).   In a contempt hearing, the contemnor is entitled to the presumption of innocence and the government has the burden of proof beyond a reasonable doubt.  *James v. United States*, 275 F.2d 332, 335 (8th Cir. 1960).

Robinson argues that the bankruptcy court's finding on April 17, 2007 should be vacated on a number of grounds.  He contends that his due process rights were violated because (1) the July 28, 2006 order which is the basis of the finding of contempt was not sufficiently specific and clear to give rise to such a finding; (2) the bankruptcy court failed to give notice of a show-cause hearing for criminal contempt; (3) the bankruptcy court failed to advise Robinson at the contempt hearing that the proceeding was criminal in nature or to state the essential facts constituting criminal contempt charges; and (4) bankruptcy court authorized counsel for the defendants in the state court actions to serve as contempt prosecutors.

None of Robinson's due process arguments have merit.  The court's order of July 28, 2006, clearly gave Robinson notice that he was not to interfere with the administration of the estate.  The  evidence is substantial that Robinson interfered with the administration of the estate when he filed state court II and when he filed his motion for permission to sue Thompson and

Rothwell for fraud, and Hankins for fraud and malpractice.  These actions, in addition to the myriad of other actions taken by Robinson to hinder the administration of these jointly administered bankruptcies, reflect a clear pattern of disregard for the bankruptcy court's order.

The procedure used by the bankruptcy court afforded Robinson due process.  Contrary to Robinson's assertions, he was given notice that he could be held in criminal contempt.  Robinson had notice and opportunity to defend himself at the February 26, 2007 hearing and it is undisputed that Robinson had notice after the bankruptcy court order of April 17, 2007 that if he did anything else to interfere with the administration of the bankruptcy case, he would be in criminal contempt of the court's order.

Moreover, the bankruptcy court's order never became final because Robinson filed timely objections with the District Court.  *See In re Ragar*, 3 F.3d 1174 (8th Cir. 1993).   He had the opportunity to present additional evidence for the District Court's *de novo* review, which he did on March 27, 2008.  *See* Fed. R. Bankr. P. 9033(d).

Finally this Court finds that counsel for the defendants in the state court actions did not serve as criminal contempt prosecutors.  The bankruptcy court's  finding on April 17, 2007 of criminal contempt was authorized by Bankruptcy Rules 9020 and 9033.  The court denied Thompson's and Rothwell's motion for contempt filed on December 7, 2007, and issued its own show cause order resulting in the second finding of criminal contempt on February 1, 2008.

This Court has now completed a  *de novo* review of the bankruptcy court's findings of fact and conclusions of law as set forth in the orders of April 17, 2007 and February 1, 2008, and finds them to be consistent with the evidence in the record.  This Court adopts the findings of fact and conclusions of law as its own and finds Robinson in criminal contempt of the

17

bankruptcy court's order of July 28, 2006 and orders that Robinson be remanded to the custody

of the United States Marshal for the Eastern District of Arkansas to be incarcerated at a place

designated by the Bureau of Prisons for a period of sixty days.  Additionally judgment is awarded

in favor of Wildlife Farms against Tommy Robinson in the amount of $102,817.81 for auction

expenses pursuant to the February 26, 2007 hearing and April 17, 2007 order, and judgment is

awarded in favor of Wildlife Farms, Thompson, and Rothwell against Tommy Robinson in the

amount of $24,417.95 for attorney's fees and costs pursuant to the February 26, 2007 hearing,

and the April 17 and October 12, 2007 orders.

Robinson shall pay a fine of $5,000.00 due forthwith to the Clerk of the United States

Bankruptcy Court for the Eastern District of Arkansas pursuant to the bankruptcy court's April

17, 2007 order.

Robinson is directed to report to the United States Marshal's Office or to the designated

facility at, or before, 2:00 p.m. on May 5, 2008, to begin service of a sixty day sentence as set out

above.

In the event of an appeal of this Court's Order, Robinson shall be permitted to delay

reporting for service of his sentence until such time as the Court of Appeals for the Eighth

Circuit has ruled on his appeal.  Robinson is released on his own recognizance until May 5, 2008,

or until the result of any appeal is announced, and he remains subject to the bankruptcy court's

order of July 28, 2006.

C.  *Bankruptcy Court's Denial of Robinsons' Chapter Seven Discharge*

The Robinsons appeal the bankruptcy court's May 17, 2007 judgment which denied their

discharge pursuant to 11 U.S.C. § 727(a)(4)(A)[12] for knowingly and fraudulently making  false oaths and accounts in their bankruptcy cases.  This decision found that (1) the Robinsons failed to list certain assets on their schedules; (2) the Robinsons failed to list their accountants and financial statements on their Statement of Financial Affairs; and (3) Tommy Robinson failed to accurately state his monthly expenses.   In considering a bankruptcy case that has been appealed to the district court, the district court must review the bankruptcy court's findings of fact for clear error and its rulings of law *de novo*.  *In re Falcon Products, Inc.*, 497 F.3d 838, 840-841 (8th Cir. 2007).

It is undisputed that the debtors' schedules contained factual inaccuracies. The debtors' contend that the incorrect statements and omissions were innocent, inadvertent, and technical mistakes which will not support the bankruptcy court's finding by a preponderance of the evidence that they made false statements and omissions under oath knowingly, intentionally, and with fraudulent intent.  Based upon the evidence contained in the record, including the transcript of the hearing held on the motion, there is clear and convincing evidence of a series of omissions and statements by the debtors which support the bankruptcy court's decision.  This Court finds no error by the bankruptcy court and its judgment is affirmed.[13]

D.  *Sheila F. Campbell's and Lewellen's Appeal of Bankruptcy Rule 9011 Sanctions.*

Judge Mixon sanctioned Campbell and Lewellen by requiring them to be jointly and severally liable with Robinson to pay the legal fees and costs incurred in the course of defending

---

[12]11 U.S.C. § 727(a)(4)(A) provides in relevant part that "the court shall grant the debtor a discharge unless . . . the debtor, knowingly and fraudulently in or in connection with the case . . . made a false oath or account."

[13]Appellees' motion to dismiss appeal is dismissed as moot (#7).

the motion for relief from stay and brief in support, and the prosecution of the first motion for

sanctions. Additionally, they were held jointly and severally liable with each other for payments

of $10,000.00 each to Thompson and Rothwell to partially compensate them for the ongoing

monetary injury of having to defray the deficit generated by Wildlife Farms. The court found

that this deficit was created by Campbell's and Lewellen's filing of the motion for relief from

stay which perpetuated the state court action II and continued to discourage buyers for the

property. Finally, the court sought to deter them from filing future and improper motions with

the court, and to partially compensate the owners of Wildlife Farms for the harm caused by the

persistent allegations of fraud.

     Campbell contends that she should not be sanctioned for Lewellen's filing of state court

action II. This Court agrees. However, the Court reads the bankruptcy court's order to sanction

Campbell only for her actions in filing the motion for relief from stay on January 9, 2007 and for

the prosecution, by Wildlife Farms, Thompson, and Rothwell of the first motion for sanctions,

and that she is jointly and severally liable only with Robinson and Lewellen for these two events.

     Campbell also contends that she filed the motion for relief from stay at the suggestion of

the state court judge who was reluctant to go forward with any litigation without the permission

of the bankruptcy court. The Court does not doubt that Judge Story was directing Campbell to

follow the appropriate rules of bankruptcy procedure. Judge Story was correct to do so. This

does not excuse Campbell from assessing the merits of filing the motion. Judge Mixon found

that Campbell failed in this endeavor and that the pleading was frivolous. The bankruptcy court

was correct in that finding.

     The record reflects that Campbell filed the motion to pursue the claim of fraud after she

had signed a stipulation in which she agreed to dismiss a counterclaim alleging fraud, and she,

and her clients, admitted they were mistaken in their assertion that Rothwell and Thompson had

committed perjury.  She also filed the motion to pursue the claim of fraud after the bankruptcy

court had approved the global settlement which had settled that claim.  With this knowledge,

Campbell should have known that the motion from relief from stay was not only without merit,

but was frivolous.

Lewellen contends that he was not the lead attorney on the motion for relief from stay and

that he was deferring to Campbell's expertise in bankruptcy, that conceivably the motion had

merit, and that Robinson refused to permit the motion to be withdrawn.  Lewellen, however,

concedes that Rule 11[14] poses a nondelegable obligation on counsel and he cannot shield himself

behind Campbell.  *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110

S.Ct. 456 (1989).  Moreover, Lewellen agreed to file this motion after his experiences with state

court case II which included a period of detention and after the global settlement which

effectively disposed of the fraud claim.  Any reasonable attorney would at this point have been

aware that such a motion would be without merit and frivolous.

Both Lewellen and Campbell point out that Judge Mixon's remarks and findings stated in

open court at the sanctions hearing were different from his written order.  Campbell argues that

the court's findings at the hearing should be the final ruling and that the court did not have the

authority to come to a different conclusion in its written order.  This argument is without merit.

The court stated in its written order that it had reconsidered its original statements regarding

---

[14]Cases interpreting Rule 11 are applicable to Rule 9011 cases.  *In re Mahendra*, 131 F.3d
750 (8th Cir. 1997).

sanctions.   Clearly to the extent that the bankruptcy court's written order of August 29, 2007

conflicts with the court's earlier oral rulings made at the April 20, 2007 hearing, the court's stated

intent was for the written order to control.   Any court may reconsider its original findings and

conclusions before issuing a final written order.

Compensatory sanctions must be reasonable in an amount based on a determination by

this Court of the hours reasonably expended and at a reasonable hourly rate.  *Ideal Instruments,*

*Inc. v. Ricvard Instruments, Inc.,* 245 F.R.D. 381 (N.D. Iowa 2007) (citing *Kirk Capital Corp. v.*

*Bailey*, 16 F.3d 1485 (8th Cir. 1994)).  This Court must also consider whether the amount

assessed is necessary to deter repetition of the misconduct in question, and the sanctioned party's

ability to pay, if inability to pay is raised as a defense.  Campbell has indirectly raised this

defense to sanctions.  This Court must ultimately consider that the primary purpose of these types

of sanctions is to deter attorney misconduct, and not to compensate the opposing party for all of

its costs in defending against the frivolous action.  *Id.*

The Court has reviewed the record *de novo*, the motion for award of attorney's fees and

costs prepared by the creditors' counsel and the orders of August 29, 2007 and October 12, 2007.

The Court has also taken into account the factors mandated by the Court of Appeals for the

Eighth Circuit for determining sanctions.

This Court finds that judgment should be, and is, entered in favor of Wildlife Farms,

Thompson, and Rothwell against Campbell, Lewellen, and Robinson pursuant to the August 29

and October 12, 2007 orders, jointly and severally, in the amount of $18,829.53 for fees and

costs and judgment should be, and is, entered in favor of Thompson and Rothwell against

Campbell and Lewellen, jointly and severally, in the amount of $10,000.00 each to partially

compensate them for the ongoing monetary injury of having to defray the deficit generated by Wildlife Farms**.**

Judge Mixon assessed separate sanctions against Campbell because it found that Campbell had made false statements to the court, had repudiated in open court her previous stipulation, that Thompson and Rothwell had not committed perjury and continued to advocate that they had, in fact, committed perjury, and had failed to conduct a reasonable investigation regarding the allegations of perjury.  Campbell was ordered to pay Thompson's and Rothwell's attorney's fees and expenses resulting from the filing of the counterclaim which included among other fees and expenses, the warning letter, original motion for sanctions, settlement negotiations of the original motion, second motion for sanctions, and the hearing on the second motion for sanctions.

Rule 9011(b) holds, in part, that a party who presents a pleading, written motion, or other paper is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the document is not being presented for an improper purpose, that the legal contentions made are warranted by existing law, and that the contentions have evidentiary support.   Fed. R. Bankr. P.9011.  Because this rule, by its own terms, only applies to written pleadings, motions or other paper, the statement made in the presence of the bankruptcy court for which Campbell was specifically sanctioned is not covered by Rule 9011(a).   *E.g., Adduono v. World Hockey Assoc.*, 824 F.2d 617 (8th Cir.1987) (in discussing Rule 11, court stated it did not apply to oral statements ); *In re Clark*, 223 F.3d 859 (8th Cir. 2000) (Bankruptcy Rule 9011 is analogous to Federal Rule of Civil Procedure 11).  Referring Campbell to the Committee on Professional Conduct was the appropriate action by the

23

bankruptcy court here.

The finding of a violation of Bankruptcy Rule 9011 by Campbell is reversed.  The entry of judgment in favor of Wildlife Farms, Thompson, and Rothwell against Campbell pursuant to the August 29, 2007 and October 12, 2007 orders, in the amount of $9,652.45 and the entry of judgment in favor of Thompson and Rothwell against Campbell pursuant to the August 29, 2007 and October 12, 2007 orders of $2,000.00 each is vacated.

> E.  *Tommy Robinson's Appeal of the Bankruptcy Court's Denial of His Pro Se Motion to File Complaints and Lawsuits.*

This Court has reviewed the transcript of the hearing held on December 14, 2007 and the subsequent orders of December 19, 2007, and finds no error of fact or law by the bankruptcy court.  The orders denying Robinson's *pro se* motion are affirmed.

III. *Conclusion*

Robinson's and Lewellen's requests for permission to appeal the findings of civil contempt are dismissed for lack of jurisdiction (#4:07MC0006 and #4:07MC0005).  Judge Mixon's finding of Robinson in criminal contempt is adopted as its own and this Court finds Robinson in criminal contempt (#4:07CV00489 and #2:07MC00001).  The bankruptcy court's denial of the Robinsons' discharge is affirmed (#2:07CV00089).  The bankruptcy court's assessment of Bankruptcy Rule 9011 sanctions against Campbell (#2:07CV000129) is reversed in part and affirmed in part.  The bankruptcy court's assessment of Bankruptcy Rule 9011 against Lewellen (#2:07CV000130) is affirmed.  The bankruptcy court's denial of Tommy Robinson's *pro se* motion is affirmed (#2:08CV00014).

Judgment will be entered accordingly.

IT IS SO ORDERED THIS  10  day of   April  , 2008.


_____
James M. Moody
United States District Judge